No. 26-1646

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

SHELDON ADELSON; PATRICK DUMONT; NEWS+MEDIA CAPITAL
GROUP, LLC; LAS VEGAS REVIEW-JOURNAL, INC.; INTERFACE
OPERATIONS, LLC D/B/A ADFAM,

*Petitioners-Defendants*,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA,

*Respondent,*

and

LAS VEGAS SUN, INC.

*Real Party in Interest-Plaintiff.*

**ANSWER TO PETITION FOR WRIT OF MANDAMUS TO THE U.S.
DISTRICT COURT FOR THE DISTRICT OF NEVADA TO
ENFORCE MANDATE**

<table>
<tr><td>

E. LEIF REID
KRISTEN L. MARTINI
NICOLE S. SCOTT
CLARK HILL PLC
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
702.862.8300
lreid@clarkhill.com
kmartini@clarkhill.com
nsscott@clarkhill.com

</td><td>

JAMES J. PISANELLI
TODD L. BICE
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
702.214.2100
jjp@pisanellibice.com
tlb@pisanellibice.com

</td></tr>
</table>

JOSEPH M. ALIOTO
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, California 94104
415.434.8900
jmalioto@aliotolaw.com

JORDAN T. SMITH
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
702.464.7022
jtsmith@bhfs.com

*Attorneys for Real Party in Interest*

## FED. R. APP. P. 26.1(A) DISCLOSURE STATEMENT

Real Party in Interest Las Vegas Sun, Inc. ("Sun"), is a non-governmental, privately held corporate party that is a wholly owned subsidiary of Greenspun Media Group, LLC. No publicly held corporation owns more than 10% of the Sun's stock.

Dated this 24th day of March, 2026.

CLARK HILL PLC

By: *s/ Kristen L. Martini*
E. Leif Reid,
Kristen L. Martini
Nicole S. Scott
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135

PISANELLI BICE PLLC
James J. Pisanelli
Todd L. Bice
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Real Party in Interest*

i

## TABLE OF CONTENTS

FED. R. APP. P. 26.1(A) DISCLOSURE STATEMENT .................................................i

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ...........................................................................iii

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

JURISDICTIONAL STATEMENT ...................................................................2

FACTUAL BACKGROUND ...........................................................................3

I.     THE PARTIES' JOINT OPERATING ARRANGEMENTS..................................3

II.    THIS COURT'S OPINION AND THE PROCEEDINGS ON REMAND ..............8

ARGUMENT ...........................................................................................16

I.     MANDAMUS IS NOT WARRANTED OR PROPER.........................................16

II.    THE DISTRICT COURT DID NOT COMMIT ERROR....................................19

     A.  THE SUN DEMONSTRATED THAT THE RJ'S CONDUCT WAS ANTICOMPETITIVE ...............................................................20

     B.  THE SUN ESTABLISHED A LIKELIHOOD OF IRREPARABLE HARM ....25

     C.  THE BALANCE OF EQUITIES SHARPLY TIP IN THE SUN'S FAVOR......27

     D.  THE INJUNCTION FURTHERS PUBLIC POLICY ...................................29

CONCLUSION .........................................................................................30

STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6.............vi

CERTIFICATE OF COMPLIANCE................................................................vii

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING.........................................viii

50918870

ClarkHill\105559\1015963\287115443.v1-3/24/26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985)....................................................................26

*Associated Press v. United States*,
326 U.S. 1 (1945) .......................................................................................28

*Burlington N. & Santa Fe Ry. Co.*,
408 F.3d 1142 (9th Cir. 2005).....................................................................19

*Cal v. Am. Stores Co.*,
492 U.S. 1301 (1989)...................................................................................24

*Ca. Motor Transport Co. v. Trucking Unlimited*,
404 U.S. 508 (1972).....................................................................................29

*Comm. for an Indep. P-I v. Hearst Corp.*,
704 F.2d 467 (9th Cir. 1983).......................................................................28

*Davies v. Grossmont Union High Sch. Dist.*,
930 F.2d 1390 (9th Cir. 1991)......................................................................27

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022).......................................................................22

*Fed. Trade Comm'n v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020)........................................................................22

*GoTo.com, Inc. v. Walt Disney Co.*,
202 F.3d 1199 (9th Cir. 2020)......................................................................18

*Hawaii ex rel. Anzai v. Gannett Pac. Corp.*,
99 F. Supp. 2d 1241 (D. Haw.)..............................................................passim

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023)................................................................. 2, 19

iii

*Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*,
    426 U.S. 394 (1976) .................................................................................................19

*Las Vegas Sun, Inc. v. Adelson*,
    147 F.4th 1103 (9th Cir. 2025) .......................................................................passim

*Leonard v. Clark*,
    12 F.3d 885 (9th Cir. 1994) ....................................................................................28

*Miami Hearld Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974) ................................................................................................27

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    422 F.3d 782 (9th Cir. 2005) ............................................................................ 19, 20

*Pac. Gas & Elec. Co v. Pub. Utilities Comm'n of Cal.*,
    475 U.S. 1 (1986) ....................................................................................................27

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) ..................................................................................23

*PharmacyChecker.com LLC v. LegitScript LLC*,
    137 F.4th 1031 (9th Cir. 2025) ...............................................................................22

*Rent-A-Ctr., Inc. v. Canyon Tele. & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ..................................................................................26

*State of Hawaii v. Gannett Pac. Corp.*,
    203 F.3d 832 (9th Cir. 1999) ..................................................................................14

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*,
    173 F.3d 713 (9th Cir. 1999) .........................................................................2, 16, 18

## Statutes

15 U.S.C. § 26 .................................................................................................................24

15 U.S.C. § 1801 ..............................................................................................................3

15 U.S.C. § 1803(b) .................................................................................................... 8, 17

28 U.S.C. § 1292(a)(1)................................................................................................ 2, 19

iv

## **<u>Regulations</u>**

28 C.F.R. § 48.14 ..................................................................................................................10

v

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

## INTRODUCTION AND SUMMARY OF ARGUMENT

On remand, the district court complied with this Court's mandate to the letter. It promptly dissolved the parties' stipulated injunction that was predicated on the 2005 JOA as this Court mandated. This Court's ruling voiding the 2005 JOA had consequences, but not as the RJ states. By declaring the 2005 JOA unlawful, the Attorney General approved 1989 JOA automatically became the operative JOA governing the parties. The 2005 JOA cannot be void for some purposes—to avoid antitrust liability—but not others—to supplant the earlier, valid JOA. And Petitioners' (the "RJ") conduct remains anticompetitive regardless of the unenforceability of the 2005 JOA. The district court, therefore, entered a *new* injunction unrelated to the enforceability of the 2005 JOA ("Order"). This Court said nothing about the enforceability of the 1989 JOA, nor the RJ's Anticompetitive Conduct. This Court did not suggest that the Sun could not pursue its underlying claims or new injunctive relief on remand. This Court did not enter a perpetual anti-injunction bar.

So, while this Court may entertain a writ of mandamus to determine whether the district court complied with the mandate, the record is clear that it did. The RJ knows this; hence, its attempt to use its Petition as a vehicle for this Court to hurriedly review the district court's new injunction before the evidentiary hearing. But there is no need for speed. The district court's preliminary injunction ruling is an appealable order, and so will its subsequent order after the evidentiary hearing. This Court should have the benefit of a complete evidentiary record before ruling in this high-stakes case. Thus,

1

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

the Court should not substitute the RJ's Petition for an appeal of the district court's present injunction.

Even if the Court were to peek at the merits, the district court did not abuse its discretion or commit clear error. Unlike the 2005 JOA, there is no reasonable dispute that the 1989 JOA received Attorney General approval and is lawful and enforceable. Through the 1989 JOA, the RJ contracted away any First Amendment right to refuse to print and distribute the Sun's newspaper. There is no constitutional violation. The district court's findings that the Sun established a likelihood of success on its antitrust claims, the Sun would suffer irreparable harm absent the injunction, and the balance of equities and public interest sharply favor the injunction stand. The RJ's Petition should be denied.

## JURISDICTIONAL STATEMENT

This Court only has jurisdiction to consider whether the district court complied with this Court's mandate directing the court to reverse its denial of the RJ's motion to dissolve the stipulated injunction. *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Wash.*, 173 F.3d 713, 719 (9th Cir. 1999). There is no basis, however, for this Court to review merits issues contained in the district court's new grant of preliminary injunctive relief that involves issues "not expressly or impliedly disposed of on appeal," for which the RJ has ordinary appeal rights. *Id.*; 28 U.S.C. § 1292(a)(1); *see also In re Kirkland*, 75 F.4th 1030, 1049 (9th Cir. 2023) (A "writ of mandamus is not to be used as a substitute for the regular appeals process.") (quotations omitted).

2

## FACTUAL BACKGROUND

### I.   THE PARTIES' JOINT OPERATING ARRANGEMENTS

In 1989, to ensure the continued publication of two separate and independent daily newspapers in Las Vegas, the Sun and the Review-Journal's prior owners, Donrey of Nevada, Inc., voluntarily entered into a 50-year Joint Operating Agreement (the "1989 JOA") to combine <u>all</u> non-editorial and -reportorial operations pursuant to the NPA, with the intention that the joint operating arrangement would continue until December 31, 2040. *See* 1RS113-14, 116-17.[1] The continued publication of two newspapers that were editorially and reportorially independent was "of paramount importance to the citizens of Las Vegas and its environs," in line with Congress' declaration of policy under 15 U.S.C. § 1801. 1RS113. Where preserving the parties' editorial and reportorial independence was "the *essence*" of their agreement for the "public interest," the parties ensured that both would remain completely autonomous. 1RS129 (emphasis added); 1RS143 § 10.8.

The Sun and RJ merged every single aspect of their business operations and the RJ was in complete and exclusive control of the joint operation. 1RS113-56 (further discussed at 4RS731-33). While the Sun would be published as an afternoon newspaper and the Review-Journal was a morning newspaper, the Newspapers were published as

---

[1]The Sun's Real Party in Interest Supplemental Record citations are styled as Vol. "RA" page number.

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

separate, independent Newspapers in a joint edition bundle a third of the year on weekends, holidays, and special editions, which featured both the Sun and the Review-Journal on the front-page nameplate. 1RS123 § 4.4; 1RS145-46 App'x A.2; 1RS147. Despite their separate distribution times and subscriber lists, the RJ was in sole control of all of it. *See* 4RS731-33. The RJ agreed to be charged with setting both Newspapers' rates and collections, the revenues from which were pooled into the joint operation that the parties split with 90 percent to the RJ and 10 percent to the Sun. 1RS155.

"To enable Review-Journal to perform its functions" as the controlling party over the joint operation, the Sun relinquished its printing press and all equipment and supplies, and turned over all subscriber and other contracts to the RJ, leaving the Sun with no infrastructure to publish and distribute its Newspaper independently and rendering it entirely dependent on the RJ. 1RS117-22. As a result, the RJ agreed to use its best efforts in managing and controlling the joint operation for the benefit of both Newspapers. 1RS127 § 5.1.3; RS130 § 5.3. While executed by Donrey of Nevada, Inc., the 1989 JOA was binding upon and inured to the benefit of the parties and their successors and assigns. 1RS144 § 10.9.

The parties sought approval from the Attorney General for the 1989 JOA. 1RS160. The DOJ not only found that despite the RJ's "responsibl[ility] for and [] ultimate decision-making authority" for all "functions of both newspapers except for news and editorial functions," the 1989 JOA furthered the purpose of the NPA because

4

the RJ could not unilaterally revise or reduce the Sun or interfere with the Sun's editorial and reportorial autonomy. 1RS183, 185, 208-10.

The Attorney General adopted the DOJ's report and recommendation and approved the 1989 JOA. 1RS227. In doing so, the Attorney General approved the parties' business combination (1RS228-40), including: (1) the 50-year term; (2) the parties' "joint edition on Saturdays, Sundays, and holidays"; (3) the RJ's responsibility for "the management, printing, and other commercial functions of the newspapers"; and (4) the parties' profit split. 1RS228-29. Because the Sun was a "failing newspaper" *and* the 1989 JOA would effectuate the policy and purpose of the NPA by enabling the Sun "to continue publication as a second editorial voice … maintaining an independent and competitive newspapers press," the Attorney General consented to the combination. 1RS238-40.

The Sun became profitable under the 1989 JOA, and the parties operated under it for 15 years (6RS1333) until the RJ requested amending it. 5RS1084 ¶ 3.

The parties entered into the Amended and Restated [Joint Operating] Agreement on June 10, 2005. 1RS250. The 2005 JOA identified the Review-Journal's owner as "DR Partners, a Nevada General Partnership, the successor-in-interest to Donrey of Nevada, Inc. ('DR')." *Id.*. Like the 1989 JOA, the parties stated that the 2005 JOA would bind all successors and assigns. 1RS259 § 10.9. The RJ admitted that it was the "ultimate successor in interest of DR Partners" in the related state court action and confirmed

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

the same in the underlying case.[2] 1RS43; ECF No. 978 at 34 ¶ 1, 40 ¶ 25; *see also* 8RS1932, 36. The parties continued the 50-year term of the 1989 JOA, intending their joint operation to run to December 31, 2040. 1RS251 § 1.2. And the 2005 JOA reaffirmed their commitment to the "public interest" in remaining editorially independent, reaffirming that preserving their editorial and reportorial autonomy was "*the essence*" of their agreement. 1RS254 § 5.2; 1RS258 § 10.8.

The parties expressly included a contingency provision in the 2005 JOA requiring the parties to revert to the 1989 JOA as the agreement that "<u>remain[ed] in full force and effect</u>" in the event their lawful performance under the 2005 JOA was hindered or impaired by the DOJ.[3] 1RS250 § 1.1. As the district court has already found, the Sun and RJ did not terminate the 1989 JOA when entering into the 2005 JOA; it rejected the RJ's argument that they terminated the 1989 JOA on "September 30, 2005." 2RS510-11; Pet.10. With the reversion proviso included, the RJ and the Sun jointly filed the 2005 JOA with the DOJ (5RS1153), and the parties proceeded to operate under the 2005 JOA for 14 years, believing that it was a valid and enforceable agreement under the NPA.

---

[2] The RJ also relied on the 1989 JOA as its primary defense in the parties' 2019 arbitration. *See, e.g.*, 1RS44 ¶¶ 12-13; 1RS46 n.7; 4RS710-13; 5RS1260.

[3] *See also Adelson*, 147 F.4th at 1111 ("[T]he DOJ did not consider the 2005 JOA to be protected by the special immunity granted by the NPA).

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

Enter the Adelson family. Even before their purchase of the Review-Journal closed, they were concocting an anticompetitive scheme to eliminate the Sun, whereby they repeatedly inquired how they could get out of the JOA and hypothesizing what would happen if there was no JOA profit, criticized the Sun's loud editorial views, and expressed desire to exclude the Sun from the Newspaper Bundle. 6RS1298, 1305-08; 2RS395-97. This motivation would drive the RJ's every action, including its arguments now.

When the RJ's purchase was finalized in December 2015, the RJ "stepped into the shoes" of its predecessors, as a successor-in-interest to the prior owners of the Review-Journal. 2RS527. The RJ then used its exclusive power over the joint operation and the Sun—harnessed since 1989—to manipulate the joint operating arrangement's framework to: (1) abuse the RJ's joint operation accounting to reduce and eliminate the Sun's profit payments; (2) fail to maximize the joint operation's profits to further drive the joint operation into a loss and eliminate the Sun's profits; (3) reduce the Sun's visibility and consumers' knowledge of the Sun; and (4) threaten unilateral termination of the joint operation through pretextual, sham litigation (together, "Anticompetitive Conduct"). *See*, *e.g.*, 4RS741-751 (citing supporting evidence[4]); 4RS947-59; 2RS516-17.

---

[4] Where the Sun cites its Motion or reply in support thereof with additional "supporting evidence," that evidence is located in the Sun's supplemental record at 2RS112-3RS492, 4RS777-7RS1721, and 1RS40-83, 4RS705-18, which also bears the appendix Bates numbers cited in the Motion and reply, or is otherwise contained with the RS.

Despite the RJ's pretextual assertion that it has "struggled financially" (Pet.11), this is the crux of the RJ's Anticompetitive Conduct in deliberately running the joint operation's profits to zero to eliminate the Sun.

## II.   THIS COURT'S OPINION AND THE PROCEEDINGS ON REMAND

On August 4, 2025, this Court issued its Opinion in the RJ's interlocutory appeal of the district court's denial of the RJ's motion to dissolve the five-year stipulated injunction that required the RJ to "perform under the 2005 JOA pending the litigation." *Las Vegas Sun, Inc. v. Adelson*, 147 F.4th 1103, 1111, 1121-22 (9th Cir. 2025). This Court's Opinion addressed the sole issue of whether the 2005 JOA was unenforceable for lack of Attorney General approval under 15 U.S.C. § 1803(b), warranting reversal of the district court's refusal to dissolve the stipulated injunction. *See Adelson*, 147 F.4th at 1108.

After analyzing its jurisdiction over the appeal (*id.* at 1112-13), this Court turned to the narrow question of "whether the [2005] JOA was lawful and enforceable under the NPA," focusing the remainder of its Opinion on that issue. *Id.* at 1113-21. After analyzing the statutory interpretation of Section 1803, this Court concluded that all JOAs post-1970, whether original JOAs or amendments, needed Attorney General approval under Section 1803(b). *Id.* at 1115-20. As a result, the Court held,

> [B]ecause it did not receive the required "prior written consent of the Attorney General," the 2005 JOA is unlawful and unenforceable. The district court erred in reaching a contrary conclusion and in denying on that basis Defendants' motion to dissolve the stipulated preliminary injunction. We therefore reverse the district court's order denying that motion, and we remand for further proceedings consistent with this opinion.

8

*Id.* at 1121-22. That was the extent of this Court's mandate.

In conducting its statutory interpretation analysis of Section 1803 (or elsewhere), this Court did not address the merits of the Sun's antitrust claims (including the RJ's liability for its Anticompetitive Conduct), the consequences of the unenforceability of the 2005 JOA on the merits of the underlying case, or the status of the Attorney General-approved 1989 JOA as a result of the invalidity of the 2005 JOA's unenforceability. *See* 147 F.4th 1103. The Court did not foreclose the Sun from pursuing any other claims or remedies on remand. And, importantly, the Court did not prohibit or otherwise limit the district court's broad discretion or equitable powers under Section 16 of the Clayton Act to fashion preliminary injunctive relief to prevent harm to the Sun and preserve competition pending resolution of the Sun's antitrust claims. *See id.*

The practical effect of this Court's nullification of the 2005 JOA was that the Attorney General approved 1989 JOA was automatically reinstituted. But the Sun rightly suspected that the RJ would immediately stop printing the Sun without court intervention. Any shutdown would inflict irreparable harm on the Sun and its readers. Accordingly, on February 23, 2026, the Sun filed its *Emergency* Motion for Temporary Restraining Order and Preliminary Injunction ("Mot."). 4RS719-76. The Sun moved under Section 16 of the Clayton Act to prevent the threatened loss and damage by the RJ's violation of antitrust laws. *Id.* The Sun requested that the district court: (1) enjoin[] the RJ from unilaterally ending the joint operation and ceasing to print and distribute

9

the Sun during the pendency of this litigation, (2) compel[] the RJ to use its best efforts to and take all action necessary to obtain Attorney General written consent of the 2005 JOA, and (3) compel[] the RJ to revert to the 1989 JOA until a final judgment on the merits or an earlier order of the Attorney General granting written approval of the 2005 JOA under 28 C.F.R. § 48.14. 4RS769.

In its request to enjoin the RJ from ceasing to print and distribute the Sun, the Sun did not advocate for performance under the 2005 JOA; instead, the Sun explained the district court should exercise its broad equitable powers under Section 16 by fashioning relief tethered to the 1989 JOA, as the status quo ante litem, which provided for continued printing and distribution of the Sun in a joint edition under various circumstances. 1RS10-12. The "preserv[ation] of the core requirements" of the joint operation that the RJ argues was the basis of the Sun's requested relief was not from the 2005 JOA—it was from the 1989 JOA.[5] *See* Pet.13.

The Sun presented overwhelming evidence and caselaw satisfying each of the four preliminary injunction factors, including the Sun's likelihood of success on its claims for monopolization, detailing: the relevant market as daily, local print newspapers in southern Nevada; the RJ's monopoly power (supported by its power to control process and exclude competition, along with its substantial market share and high barriers to

---

[5] The RJ's continued material obligations from the 1989 JOA in the 2005 JOA demonstrate the RJ's continual and exclusive power and control over the joint operation when undertaking its Anticompetitive Conduct. *See* 4RS735-39.

10

entry); the RJ's willful acquisition and maintenance of monopoly power; and antitrust injury, including the RJ's Anticompetitive Conduct and its harm to competition, the Sun and consumers. 4RS740-69 (citing supporting evidence).

After filing its Motion, the Sun sought leave to amend and supplement its complaint to address the enforceability of the approved 1989 JOA after this Court's Opinion, emphasizing that the Sun's antitrust claims remain viable where the RJ exercised complete control over all the business aspects of the joint operation (and therefore the Sun) stemming back to 1989, and that the RJ's Anticompetitive Conduct has weakened the Sun's ability and incentives to compete, reduced consumers' knowledge of the Sun and harming its brand, and threatened to eliminate it from the market, harming competition and consumers (all issues that were previously briefed at summary judgment). *See* 1RS96-111; APP0194-254. The Sun explained that the RJ's continual exploitation of power gained in 1989 has harmed competition. *Id.* The Sun further alleged that the RJ's efforts to eliminate the Sun and avoid all antitrust liability by having the 2005 JOA declared unenforceable *without* reverting to the 1989 JOA or seeking Attorney General approval of the 2005 JOA in an attempt to eliminate its sole competitor is anticompetitive. APP0238-40.

Immediately after the Sun filed its Motion, but before this Court issued its mandate, the RJ filed its Renewed Motion to Dissolve Preliminary Injunction. The Sun did not oppose the RJ's renewed motion to dissolve the old injunction given this Court's mandate. 1RS84-94.

11

At first, the district court set a hearing on the Sun's Motion and the RJ's renewed motion for March 13, 2026. The district court, however, vacated the hearing and granted the RJ's unopposed renewed motion to dissolve the old injunction. APP0284. The district court also granted in part the Sun's Motion as related to its new request based upon serious issues raised around the RJ's Anticompetitive Conduct and the enforceable 1989 JOA to enjoin the RJ from ceasing to print and distribute the Sun. *Id.* The express purpose of the Order was "to dissolve the stipulated preliminary injunction consistent with the Ninth Circuit's order on remand, while maintaining the status quo pending the orderly resolution of all other motions." APP0274. The district court then set an evidentiary hearing on the Sun's Motion for April 10. APP0284.

In its Order addressing the Sun's Motion, the district court first analyzed the likelihood of success factor, finding that the Sun

> has at least raised serious questions regarding whether the RJ's conduct meets the relevant standards. Based on the evidence submitted with the motion for preliminary injunctive relief, there is at minimum a serious question on the merits of the Sun's claims that the RJ willfully acquired and maintained its dominant market position through the alleged anticompetitive acts, causing injury.

APP00277. Relatedly, the district court found that "[t]he Sun has at least shown serious questions going to the merits of their proposed market definition," as supported by the data analysis undertaken by the Sun's renowned expert economist Dr. Michael Katz, and noting that the RJ has failed to challenge the Sun's relevant market twice before. APP0277-78. The district court similarly concluded that the Sun met its burden in

12

establishing that the RJ's conduct was anticompetitive, additionally explaining that "the Sun's claims turn on allegations of anticompetitive conduct, *not breach of the 2005 JOA.*" APP0278 (emphasis added). The Sun also established that it engages in cognizable competition under antitrust laws, and that its requested relief would restore competition in the relevant market, wherein the district court also reiterated its prior findings that:

> editorial competition is commercial competition in the newspaper context. The theory, as laid out in comparable precedents, is that editorial competition between competing newspapers produces financial rewards, such as by increasing a newspaper's value, especially in the eyes of potential acquisitors, and enhancing its bargaining position when a JOA containing a profit-sharing agreement is up for renegotiation or termination. Editorial competition may also increase traffic to the Newspapers' digital operations outside of the joint operation and promote their principal owners' economic or business interests more broadly.

APP0278-79 (quotations and citations omitted).

For the second factor, the district court concluded that the Sun showed a likelihood of irreparable harm if injunctive relief was not granted because evidence demonstrated that ceasing to print and distribute the *Sun* would cause the Sun to suffer immediate and intangible harms in the form of "loss of staff and ability to recruit new employees… loss of readership and visibility, and loss of goodwill," and tangible harms in the form of "credibl[e]" evidence that it would face "an immediate risk of closure," which established irreparable harm. APP0279-80 (citing cases).

The third balance of equities factor also favored the Sun where "the Sun may face a risk of closure if preliminary injunctive relief is not granted, the RJ faces no such

13

corresponding risk." APP0280. As explained by the district court, "the RJ is required to do nothing more than to continue printing and distributing the Sun, which it has done since 1989." *Id.* The district court rejected the RJ's First Amendment arguments relying on *Hawaii ex rel. Anzai v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1252 (D. Haw.), *aff'd sub nom. State of Hawaii v. Gannett Pac. Corp.*, 203 F.3d 832 (9th Cir. 1999), where this Court affirmed that "enjoining a defendant from terminating a joint operating agreement furthered the aims of the First Amendment, rather than violating that defendant's First Amendment rights to refrain from speaking or publishing," and preserving two distinct newspaper voices in the relevant market furthers the aims for the First Amendment as expressed by the Supreme Court. APP0280-81. The district court found that public policy favors preserving the publication of newspapers, and the policies of antitrust law favor the production and distribution of the Sun for the benefit of consumer welfare. APP0281.

For the final, public interest, factor, the district court concluded that the public's interest was not only in preserving distinct newspaper voices, but it is also the "motivating policies of antitrust law favor protecting the production and distribution of the Sun." APP0281-82. Closing a local newspaper deprives readers, advertisers, and writers of the monetary and nonmonetary benefits of a free and open marketplace." *Id.* Because of the public interest in preserving a second newspaper, and preventing elimination of a competitor through anticompetitive conduct, the public interest favored the injunction where the failure to preserve the Sun would "lead to irreversible

14

harms and foreclose th[e] [c]ourt's ability to consider injunctive relief if the Sun prevails at trial." APP0282.

Only after the district court found that the Sun satisfied each of the *Winter* factors, did it turn to the remedy, looking to the purpose of Section 16. APP0282-83. The RJ argued that the status quo ante litem was under the 2005 JOA. APP0283. The Sun countered that the status quo ante litem was the valid and enforceable 1989 JOA. *Id.*; 1RS12. The district court found that the "RJ object[ed] to all proposed forms of relief" despite failing to "counter the Sun's theory" that the 1989 JOA remained enforceable. APP0283. More importantly, the district court found that "the RJ d[id] not address what remedies would be available to the Sun if it prevails on any of its antitrust claims," where "[t]he Ninth Circuit's opinion did not address those antitrust claims or available remedies." *Id.* In other words, in the RJ's view, the only option was to eliminate the Sun from the market and give the RJ a literal monopoly in the market. *Id.*

Accordingly, the district court concluded that "[u]nder any interpretation of the status quo ante litem, the RJ printed and distributed the Sun," including under the 1989 JOA, to "maintain[] the existence of a second editorial voice in the relevant market for local news." *Id.* Thus, in dissolving the stipulated injunction, where this Court's Opinion did not address the Sun's claims or the 1989 JOA, among other issues, the district court concluded,

> [T]he value of preserving the core of the status quo arrangement cannot
> be reduced to an award of damages. Some interim injunctive relief is
> necessary to protect community and consumer interests, allow time to

15

fully brief and adjudicate the Sun's motion to amend the complaint and preliminary injunction motion, and ensure the availability of any appropriate injunctive relief post-trial. The Sun's complaint raises substantial antitrust questions which should be resolved before an irremediable loss is dealt, not afterwards.

*Id.*

After the RJ filed its Petition with this Court, it sought an emergency stay of all proceedings below pending this Court's determination, including the April 10 evidentiary hearing on the Sun's Motion. ECF No. 1099. On March 20, 2026, the district court granted the stay, and vacated the April 10 hearing pending a decision from this Court. ECF No. 1100.

## ARGUMENT

### I. MANDAMUS IS NOT WARRANTED OR PROPER

Mandamus is only appropriate when a lower court disregards or obstructs an appellate court's mandate. *Vizcaino*, 173 F.3d at 719. Indeed, this Court's mandate is the "law of the case as was established by the appellate court"; however, the mandate is limited to the issues resolved by this Court and, on remand, the trial court is free to consider "any issue not expressly or impliedly disposed of on appeal." *Id.* (quotations omitted). The district court complied with this Court's mandate by dissolving the stipulated injunction predicated on the 2005 JOA. APP0284. The court's issuance of new injunctive relief after assessing the *Winter* factors was not an issue previously considered by this Court.

16

This Court's Opinion addressed the sole issue of whether the 2005 JOA was unenforceable for lack of Attorney General approval under 15 U.S.C. § 1803(b), warranting reversal of the district court's refusal to dissolve the stipulated injunction. *Adelson*, 147 F.4th at 1108. Its analysis was confined to the issue of statutory interpretation of Section 1803 as applied to the 2005 JOA. *Id.* And this Court's only conclusion was that the 2005 JOA was invalid because it required prior Attorney General written consent. *Id.* at 1121. This Court's mandate was equally narrow: it required dissolution of the injunction because the stipulated injunction was based upon the 2005 JOA. *Id.* at 1121-22.

On remand, the district court specifically followed the Court's directive. APP0272, 284. Its Order expressly dissolved the stipulated injunction "consistent with the Ninth Circuit's order on remand." APP0272, 275.

The RJ's argument that the district court's grant of new injunctive relief violates this Court's mandate is disproved by this Court's Opinion and the record below. This Court's Opinion is silent as to the merits of the Sun's antitrust claims, the consequences of the unenforceability of the 2005 JOA, and the continuing validity of the 1989 JOA and the RJ's required performance under it. *See generally Adelson*, 147 F.4th 1103. This Court did not address the district court's equitable authority under Section 16 of the Clayton Act, or otherwise restrict the district court's authority to enter further injunctive relief pending the outcome of the various unresolved issues after remand. *Id.*

17

Because these issues were neither the subject of the prior appeal nor expressly or impliedly disposed of in this Court's Opinion, the district court's new injunctive relief under Section 16 of the Clayton Act—to prevent antitrust harm during the pendency of the underlying litigation—cannot be deemed in violation of this Court's mandate. *See Vizcaino*, 173 F.3d at 719. While the RJ argues that the district court's injunction nonetheless compels the RJ to "perform[] the 2005 JOA," that is false. Pet.16-17. The new injunction maintains the status quo in a world where the 2005 JOA is now unlawful. The last uncontested status before the 2005 JOA was voided is the parties' joint operation governed by the 1989 JOA with the RJ printing and distributing the Sun, preserving it as a second newspaper voice.[6] Contrary to the RJ's statements, the RJ's obligations to print and distribute the Sun were borne from the 1989 JOA, an agreement properly approved pursuant to Section 1803(b) and consistent with this Court's Opinion, not the 2005 JOA.

In sum, the district court has complied with this Court's mandate under all circumstances. The district court's new grant of injunctive relief arises from matters not addressed by the mandate and which remained open for the district court's consideration on remand. At the very least, these issues are highly factual, complex, and

---

[6] *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2020) (defining "the status quo ante litem" as "not simply to any situation before the filing of a lawsuit, but instead to "the last uncontested status which preceded the pending controversy").

contested.[7] So, at minimum, the RJ's "right to issuance of the writ is [not] clear and indisputable," warranting denial for this reason alone. *See Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976) (quotations omitted); *In re Kirkland*, 75 F.4th at 1049 ("[T]he availability of alternate means for obtaining relief weighs against mandamus relief where the Supreme Court has clearly instructed that the writ of mandamus is not to be used as a substitute for the regular appeals process.") (quotations omitted).

Because the district court didn't violate this Court's mandate, and the RJ's Petition seeks to resolve factual injunctive relief issues that were not previously addressed by this Court and are thus inappropriate for mandamus review, the RJ's writ request should be denied. The RJ should be required to appeal under 28 U.S.C. § 1292(a)(1) after the contemplated evidentiary hearing.

## II. THE DISTRICT COURT DID NOT COMMIT ERROR

Even if this Court nevertheless endeavors to review the district court's injunction, the RJ's Petition must still be denied because the absence of clear error or an abuse of discretion is dispositive. *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d 1142, 1146 (9th Cir. 2005). This Court's review of the injunction "is limited and deferential." *E.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005) (quotations

---

[7] Just one example of a disputed issue of fact not appropriate for resolution on appeal is the RJ's out-of-context citations to text messages and a note about the Sun's willingness to continue publishing. *Compare* Pet.10 *with* 7RS1727-29.

19

omitted). It ordinarily will "not decide the ultimate merits of the case, but only the temporal rights of the parties until the district court renders judgment on the merits of the case based on a fully developed record." *Id.* And reversal is only warranted upon a finding that "the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Id.* (quotations omitted). "Mere disagreement with the district court's conclusions is not sufficient reason for [the Court] to reverse the district court's decision regarding a preliminary injunction." *Nat'l Wildlife Fed'n*, 422 F.3d at 793.

Here, the RJ does not dispute that the district court employed the proper legal standards for a preliminary injunction. *See* Pet. Instead, the RJ asserts sporadic challenges to the district court's findings that: (1) the Sun had "at least raised serious questions" as to the merits of the RJ's anticompetitive conduct (*id.* at 22-25); (2) the Sun had shown a likelihood of irreparable harm (*id.* at 25-27); and (3) the balance of equities and public interest sharply favor the Sun. *Id.* at 18-21, 27-28. None of the court's findings were made in error. Even disagreement with the district court's conclusions do not support reversal.

## A. The Sun Demonstrated that the RJ's Conduct was Anticompetitive

The RJ misleads this Court when it states that the only evidence "relevant to the merits" of the RJ's Anticompetitive Conduct cited by the district court was the "expert report from the Sun regarding the definition of the relevant market." *See* Pet.22. This

is untrue. The district court cited to the Sun's Motion, which relied on Dr. Katz's extensive analysis about the RJ's challenged conduct and the effects therefrom, when concluding that the Sun had satisfied its burden. APP0278 (citing 4RS740-41, which cited 4RS947-59).[8] Notably, the district court had reviewed this issue before. 2RS516-18. This evidence showed how each element of the RJ's Anticompetitive Conduct was not competition on the merits, weakened the Sun's ability and incentive to compete, created uncertainty that raised the Sun's costs and weakened the Sun's investment incentives, and reduced consumer awareness and knowledge of the Sun and its brand. *E.g.*, 4RS947-59. Dr. Katz also analyzed how each element of the RJ's Anticompetitive Conduct reinforces the others to harm competition, which—if not restrained—would create a literal monopoly in the relevant market. *Id.*

The fact that Dr. Katz's report was made prior to this Court's Opinion does not alter the anticompetitive nature of the RJ's conduct, or its effects. *See* Pet.22. Dr. Katz will be available for any evidentiary hearing set by the district court to confirm that his opinions remain unchanged. Moreover, the law is clear that the purpose of antitrust laws is to promote consumer welfare, and citizens are deputized as private attorneys general to bring antitrust actions in furtherance of public good. 1RS24 (citing cases). For this reason, antitrust plaintiffs are entitled to proceed with antitrust claims despite

---

[8] The district court's citation to the Sun's Motion also included the Sun's citations to evidence where the RJ was exploring ways to terminate the Sun. APP0278 (also citing 4RS740-41, which relied on 5RS1271, 6RS1302-08, 2RS395-97).

50918870

ClarkHill\105559\1015963\287115443.v1-3/24/26

an illegal agreement. *PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1039-41 (9th Cir. 2025). Where otherwise competitive conduct that is not competition on the merits "harm[s] the competitive *process* and thereby harm[s] consumers," it is anticompetitive under antitrust laws. *E.g.*, *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 990 (9th Cir. 2020); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022). The 2005 JOA's unenforceability does not alter the antitrust analysis: "the Sun's claims turn on allegations of anticompetitive conduct, not breach of the 2005 JOA." APP0278. The district court's finding that the Sun showed the RJ has undertaken competition-*reducing* conduct that is not competition on the merits, harming the Sun and consumers, is not clearly erroneous. APP0278. There is certainly no basis for this Court to disturb these factual findings in this expedited writ context.

As a collateral challenge to the district court's finding, the RJ argues that the court "conflated the question of antitrust liability with the question of antitrust remedy." Pet.22-23. This is inaccurate. The Order itself disproves the RJ's argument, where the district court applied the proper *Winter* standards, analyzing each factor, and upon concluding that the Sun satisfied its burden under *Winter*, looked to Congress's express authorization to grant injunctive relief under Section 16 of the Clayton Act, which affords injunctive relief "under the same conditions and principles" in equity and the rules. *Compare* Pet.22 *with* APP0276-83.

Taking each of the RJ's remaining arguments in turn, the RJ contends that the Sun's antitrust claims—which allege that the RJ is threatening to eliminate the Sun from

22

the market (APP0060-103)—are not reasonably related to the court's injunction preventing the RJ from ceasing to the print and distribute the Sun. *See* Pet.23. Not so. The question is whether the injunctive relief "ha[s] a relationship or nexus to the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 637 (9th Cir. 2015). The district court's injunction enjoined the RJ from executing on its Anticompetitive Conduct being litigated below to eliminate the Sun from the market by requiring the RJ to continue printing and distributing the Sun. APP0276-79, 283; *see also* APP0102 (seeking a permanent injunction enjoining the RJ from continuing its Anticompetitive Conduct). That's why there was a stipulated injunction for the last six years in the first place.

Next, the RJ asserts that the Clayton Act did not grant the district court authority to issue the injunction. Pet.23-25. As an initial matter, besides that the RJ pretends the district court did not find the RJ's conduct anticompetitive, the RJ also disregards the court's findings that the unenforceable 2005 JOA could not displace the 1989 JOA (APP0283) and that the parties did not terminate the 1989 JOA. 2RS510-11. The extensive history between the parties and the source of their combination originated from the 1989 JOA that the Attorney General approved. The purpose of the original joint operating arrangement, whereby the Sun relinquished its ability to independently print and distribute its newspaper and the RJ took control over all of the parties' combined business operations, was to preserve the Sun as a second newspaper—not to give the RJ that power for it to eliminate its sole competitor. 1RS183, 185, 208-10, 238-

23

40. Moreover, inherent in the Attorney General's approval of the Newspapers' original consolidation and price-fixing, it found that the benefits to consumers in having distinct newspapers voices promoted competition were furthered by the combination when faced with the alternative of one newspaper having a literal monopoly. The district court's findings on the merits of the Sun's underlying claims demonstrate that the injunction gives effect to both the Clayton Act and the NPA. Neither the RJ, nor this Court, should ignore the Attorney General's findings authorizing the two Newspapers' joint operating arrangement under the NPA. The premise of the RJ's position that the injunction does not "serve a pro-competitive purpose" is fundamentally and factually flawed. Pet.24.

The RJ's grievance, stated another way, is that preserving the joint operation to which it contractually agreed since 1989 (and under these circumstances), while the district court resolves the Sun's antitrust claims and other requests for injunctive relief whereby the parties would continue their operations under a lawfully approved JOA, prevents the RJ from executing the ultimate step in its anticompetitive scheme, *i.e.*, eliminating its only competitor. The district court recognized this, finding that the RJ has refused to acknowledge *any* remedy available to the Sun if it prevails on any of its antitrust claims. APP0282-83. This is precisely what Section 16 was enacted to prevent. *E.g.*, 15 U.S.C. § 26; *Cal. v. Am. Stores Co.*, 492 U.S. 1301, 1304 (1989) (the "lessening of competition is precisely the kind of irreparable injury that injunctive relief under section 16 of the Clayton Act was intended to prevent") (quotations and citation

24

omitted); *Gannett*, 99 F. Supp. 2d at 1254 (concluding the shutdown of the weaker JOA newspaper would impair the circulation and access, adversely affect public perception of its viability, and would silence the weaker paper's "editorial and reportorial voice," which Section 16 was designed to prevent).

### B. The Sun Established a Likelihood of Irreparable Harm

Without the district court's injunctive relief, it is undisputed the RJ will immediately stop printing and distributing the Sun. Pet.; APP0279. The district court correctly recognized the consequences resulting therefrom as irreparable harm. APP0279-80; 1RS242. The RJ superficially challenges the district court's finding of irreparable harm, but it is actually contesting the merits of the Sun's relevant market, which the district court properly rejected more than once. Pet.25-27; APP0277-78. The RJ's argument that the Sun will not lose its newspaper editorial voice because it can exercise its voice in its website and its parent company's entertainment, tourism, and business guides and magazines is a nonstarter. Pet.25. Those publications are not part of the relevant product market (local, daily print newspapers) nor would they be commercially viable as the evidence showed. *See* ECF No. 1092 at 24; 7RS1675-76; 3RS654-55. The RJ's gripe that the Sun could pay the RJ to print the Sun (Pet.26) is equally unavailing, where the Sun has not received a profit payment from the joint operation in nine years as a result of the RJ's Anticompetitive Conduct. The RJ also continually refuses to acknowledge the district court's prior summary judgment findings and the evidence that the Sun has shown the high barriers to entry, such as lack of

25

access to established distribution channels and workforce requirements, among other things. 4RS757 (citing 5RS1040-45, 1055-58; 4RS941; 3RS654 ¶ 15); APP0277.

The RJ's relegation of the district court's finding of irreparable injury to the "Sun 'los[ing]' … the opportunity to force the Review-Journal to carry the Sun's voice in print in the Review-Journal's publication" is a gross mischaracterization of the district court's findings. Pet.25-26. Not only has the district court found that the RJ is not "carrying" the Sun (and they are, in fact, separate newspapers that are jointly distributed) (2RS510), but the district court specifically identified the immediate tangible and intangible harms the Sun would suffer absent an injunction as supported by "credib[le]" evidence and previously found by this Court. *E.g.*, APP0279-80; 7RS1675-76; 1RS242; 3RS654; *Rent-A-Ctr., Inc. v. Canyon Tele. & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.,* 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm."); *Gannett*, 99 F. Supp. 2d at 1253 (finding that the mere threat of elimination of a JOA newspaper warranted an injunction due to the irreparable injury sustained from the loss of competition, and impairment of circulation, public perception of the viability of the weaker paper, and viability of the newspaper, for which no monetary amount could compensate).

26

The district court's factual findings that the Sun would suffer immediate irreparable injury were not erroneous. They should not be disturbed on appeal given the applicable standard of review.

## C. The Balance of Equities Sharply Tip in the Sun's Favor

The RJ suffers no inequity or violation of its First Amendment rights by the injunction. Again, as a matter of law, it is not being forced to "carry" the Sun's editorial viewpoint. 2RS520; 7RS1837-38 (citing supporting evidence); *see also Gannett*, 99 F. Supp. 2d at 1252-53 (holding the court was not compelling the defendants "to publish any particular viewpoint," but merely enjoined them to continue "publishing a newspaper with whatever editorial and reportorial content they deem appropriate"). And the RJ is not publishing the Sun under a right to reply to press criticism of a candidate for nomination or election, nor is the Sun a third-party newsletter that the RJ is publishing in *the RJ's* Newspaper. Pet.3, 18-19 (citing *Miami Hearld Pub. Co. v. Tornillo*, 418 U.S. 241, 247 (1974) & *Pac. Gas & Elec. Co v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 15-16 (1986)).

Moreover, the RJ knowingly and voluntarily contracted away any First Amendment right to not print and distribute the Sun when it entered into the 1989 JOA. *See* 2RS534-35 (also citing *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991) ("The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent.")); *Gannett*, 99 F. Supp. 2d at 1253 (rejecting

27

the newspaper's First Amendment argument where the newspapers "voluntarily entered into the JOA"); 4RS730-33 (discussing and citing 1989 JOA provisions). The RJ's purchase of a newspaper that is subject to an Attorney General-approved JOA is a clear and express waiver of a newspaper's First Amendment rights.

The NPA and the Attorney General's approval of the 1989 JOA (1RS157-240) further dispels any argument that the RJ's waiver of any First Amendment rights should not be enforced, because "the interest in its enforcement" is most certainly not "outweighed in the circumstances by a public policy harmed by enforcement of the agreement" to waive those rights. *Leonard v. Clark*, 12 F.3d 885, 890 (9th Cir. 1994) (cited by 2RS535); *Gannett*, 99 F. Supp. 2d at 1252-54 (explaining that "'First Amendment, far from providing an argument against application of the Sherman Act, here provides powerful reasons to the contrary'" (quoting *Associated Press v. United States*, 326 U.S. 1 (1945))). In the RJ's own words, publishing content "diverse" from the RJ's own views was always the "entire point" of the parties' combined operation in 1989. 1RS45-46 ¶ 35. The RJ's waiver was categorically and undisputedly found to be *in* the paramount public interest in preserving the Sun Newspaper as a distinct editorial voice in Clark County. 1RS238-40; *see also Comm. for an Indep. P-I v. Hearst Corp.*, 704 F.2d 467, 483 (9th Cir. 1983) (finding no First Amendment injury under a JOA entered into pursuant to the NPA). And the RJ has never presented any evidence in the seven years of litigation

28

that it has suffered any harm from printing and distributing the Sun Newspaper other than printing costs.[9] 2RS537-38.

"It is well settled that [the RJ's] First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates" antitrust laws. *See Ca. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972). The district court's reliance on *Gannett* was correct given the underlying merits issue as to the validity of the 1989 JOA, where that court rejected the RJ's very argument, and which this Court upheld on appeal. 99 F. Supp. 2d at 1252-53. The RJ simply cannot use its First Amendment rights "as the means or the pretext for achieving 'substantive evils,' which the legislature has the power to control. Certainly the constitutionality of the antitrust laws is not open to debate." *Id.* at 515 (citations omitted). The district court's findings that the balance of equities sharply favors the Sun are not clearly erroneous.

### D. The Injunction Furthers Public Policy

Having appropriately resolved the RJ's First Amendment challenge when addressing the RJ's blended equities and public policy argument made below,[10] the

---

[9] The Sun's "Note to Readers" *from 2018* in no way "instruct[ed] readers *not* to subscribe" to the Newspaper Bundle. *See* 2RS456; *see also* 4RS749-50 (citing supporting evidence).

[10] *Compare* Pet.28 *with* ECF. No. 1070 at 22-24 (the RJ's merged arguments) & APP0282 (the district court stating the RJ's "First Amendment concerns [were] already addressed *supra*").

district court was correct to conclude that public policy favors not only preserving local newspapers but also preventing anticompetitive conduct from eliminating competition and harming consumers. APP0281-82; *Gannett*, 99 F. Supp. 2d at 1250. The court's discussion of studies was not limited to the Sun's "particular viewpoint" as the RJ suggests. *Compare* Pet.27 *with* APP0281 (discussing studies that focused on the effects suffered from any loss of local print newspapers). The RJ's argument is a conspicuous attempt to turn the underlying dispute into in a political battle of left versus right ideologies. The focus of this dispute, however, is not whether one ideology is 'better' than the other: it is that having *diverse* editorial and reportorial newspaper viewpoints benefits the public interest as declared by Congress and as furthered by antitrust policy. The district court did not err in finding that the injunction favored public policy.

## CONCLUSION

The Petition should be denied.

Dated this 24th day of March, 2026.

CLARK HILL PLC

By: *s/ Kristen L. Martini*
    E. Leif Reid,
    Kristen L. Martini
    Nicole S. Scott
    1700 S. Pavilion Center Drive, Suite 500
    Las Vegas, Nevada 89135

    PISANELLI BICE PLLC
    James J. Pisanelli
    Todd L. Bice

30

400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

BROWNSTEIN HYATT FARBER
SHRECK, LLP
Jordan T. Smith
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106

ALIOTO LAW FIRM
Joseph M. Alioto
One Sansome Street, 35th Floor
San Francisco, California 94104

*Attorneys for Real Party in Interest*

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s) 26-1646**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/ Kristen L. Martini*      **Date** March 24, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

vi

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** 26-1646

I am the attorney or self-represented party.

The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the page limit of Cir. R. 21-2(c).

**Signature** _s/ Kristen L. Martini_      **Date** March 24, 2026
*(use "*s/*[typed name]*" *to sign electronically-filed documents)*

vii

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

## 9th Cir. Case Number(s) 26-1646

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Service on Case Participants Who Are Registered for Electronic Filing:

[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

Service on Case Participants Who Are NOT Registered for Electronic Filing:

[X] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

United States District Court for the District of Nevada
400 S. Viriginia Street
Reno, Nevada 89501

Description of Document(s) (required for all documents):

Answer to Petition for Writ of Mandamus to the U.S. District Court for the District of Nevada to Enforce Mandate

**Signature** *s/ Kristen L. Martini*      **Date** March 24, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

50918870
ClarkHill\105559\1015963\287115443.v1-3/24/26